BLAKE V. BERNHARD.

*Attachment — what sufficient evidence of fraud.*

The affidavit, upon the issue of an attachment on the ground of fraud, alleged the facts constituting fraud upon information and belief, and one of the affiants averred that he stated to defendant the facts, that defendant did not deny them, but promised to immediately call and settle or give security. *Held,* sufficient evidence of the fraud to warrant the attachment.

APPEAL by defendant from an order at chambers denying a motion to set aside an attachment.

The attachment was issued upon a claim of Clinton H. Blake and another against Siegel Bernhard for goods sold and delivered. The opinion states sufficient facts.

*Adolph L. Sanger,* for appellant, cited *Scott* v. *Simmons,* 34 How. 66; *Dickerson* v. *Benham,* 20 id. 343; *Wilson* v. *Britton,* 26 Barb. 562; *Mott* v. *Lawrence,* 17 How. 559; *Frank* v. *Levie,* 5 Robt. 599; *Frost* v. *Willard,* 9 Barb. 446; *St. Amant* v. *De Beixcedon,* 3 Sandf. 704; *Furman* v. *Walter,* 13 How. 348; *Blason* v. *Bruno,* 21 id. 112; *Brewer* v. *Tucker,* 13 Abb. 76; *Hill* v. *Bond,* 22 How. 272; *Matter of Bliss,* 7 Hill, 187; *Skiff* v. *Stewart,* 39 How. 388.

*George S. Sedgwick,* for respondents.

Present — BRADY and DANIELS, JJ.

BRADY, J.   The plaintiff, F. D. Blake, on the application for the attachment granted herein, averred, that he had been informed and believed that the defendant contracted the debt fraudulently, with the intent to defraud the plaintiff, also that the defendant was then engaged in putting all his property out of his hands; and upon information and belief alleged further, that within the then next five days, the defendant intended to refuse payment on all his obligations, and defraud his creditors of their just claims against him, in accordance with a deliberate plan formed anterior to the time of the purchase of the goods sold him by the plaintiffs. He also alleged that his father, Hamilton Blake, called on the

defendant and accused him of the facts stated, as he was informed by his father, and that the defendant did not deny the truth of the accusations, but promised to call in and see the affiant "in relation to an immediate payment of said claim by noon of to-day, the 11th of December." The acts and designs thus charged against the defendant rested upon information and belief, except, perhaps, the allegation that the defendant was engaged in putting his property out of his hands, which seems to be a positive affirmation thereto, and disconnected from the averment of information and belief. The source of information is, however, stated, namely : the father of the plaintiff, whose affidavit was a part of the proof upon which the attachment was granted. He states that having been informed, confidentially, of the facts and circumstances mentioned in the affidavit of his son, F. D. Blake, which he had read, he went to the defendant, stated to him such information, and that the defendant did not deny the truth of the statements, but promised to call at the place of business of the plaintiffs, with reference to a settlement and satisfaction of the plaintiffs' claim, or security therefor.

The facts and circumstances set forth by the plaintiffs, upon which the right to an attachment was claimed, were thus made absolute unless the omission to deny them is neither an acknowledgment of their truth nor an acquiescence in the guilty conduct charged, making out a *prima facie* case of fraudulent design. It cannot well be doubted that the omission of the defendant to deny them, coupled with a promise to call on the plaintiffs immediately, in effect, and settle their claim or give security for it, may be regarded as evidence of an intention to do what was contemplated by the information communicated to him. The promise to call immediately may well have resulted from the apprehension which knowledge of his intent would naturally occasion. The history of fraud is replete with instances in which the debtor, on being advised of the knowledge of his schemes, has sought at once to make arrangements with his creditors to avoid their unpleasant consequences, if subjected to judicial examination and punishment. In criminal cases, the silence of the accused, when it is his duty to speak, is some evidence against him, and the rule seems more applicable to civil cases, in which it may be that the liberty of the person accused is not jeopardized. The implication of assent to a statement affecting the guilt or innocence of an individual from an omission to controvert, qualify or explain it, arises from the fact that a person,

knowing the truth or falsity of a statement affecting his rights made by another in his presence, will naturally, under circumstances calling for a reply, deny it, if he be at liberty to do so, and if he do not intend to admit it. *Kelley* v. *People*, 55 N. Y. 572.

This reasoning applies to this case. The defendant, when charged with the acts set forth, did not deny them. He promised, in answer, to call on the plaintiffs " by 12 o'clock " of the day on which he was spoken to and settle or give security.

This tacit admission was sufficient to warrant the judicial act of granting the attachment. No conclusion could well be entertained other than that the defendant, if guiltless, would at once have said so, and have left the plaintiffs to any remedy which they might adopt. He would not, it may reasonably be presumed, have remained silent, and sought, by promise of settlement, to conciliate his creditor. It may be said to be improbable that the defendant would be guilty of such an admission as he is alleged to have made; but the revelation may have been sudden, unexpected, and, as truth is powerful, may have thrown the defendant off his guard. Such results are not infrequent. However this may be, the facts disclosed clearly authorized the warrant, and the order made at special term must be affirmed.

*Judgment affirmed.*